**4UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03755-DOC-AS Date: July 8, 2026

Title: Nereyda Guadalupe Rodriguez-Sanchez v. Field Office Director, ICE Enforcement and Removal Operations, Los Angeles et al

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
| --- | --- |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
| --- | --- |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [2]**

Before the Court is Petitioner Nereyda Guadalupe Rodriguez-Sanchez's ("Petitioner") Ex Parte Application for a Temporary Restraining Order ("Application" or "App.") (Dkt. 2). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having considered the arguments, the Court **GRANTS** the Application.

## I. BACKGROUND

### A. Facts

Petitioner is currently proceeding pro se. As such, the Court construes her filings conjunctively and the below allegations come from her Petition (Dkt. 1) and Application (Dkt. 2).

Petitioner originally came to the United States from Mexico on April 20, 2005 entering near San Ysidro, California. Petition (Dkt. 1) ¶¶ 3, 9. She is a native of Mexico. *Id.* ¶ 3. She has resided in the United States for the 21 years following her entry and has since developed deep ties with the country. *Id.* ¶ 9. She has U.S. citizen spouse and two U.S. citizen children—ages 20 and 16. *Id.* ¶ 10. She files income taxes regularly and has no criminal history. *Id.*

Petitioner was detained by ICE on June 28, 2026 and taken into custody. *Id.* ¶ 11. She is now detained at Adelanto. *Id.* Petitioner has no final order of removal and has not been given a bond hearing since her detention. *Id.* ¶ 12.

### B. Procedural History

On July 7, 2026 Petitioner filed her Petition (Dkt. 1). She filed her Ex Parte Application for Temporary Restraining Order (Dkt. 2) on the same day.

Respondents have not filed a response, but presumably oppose.

## II. LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

## III. DISCUSSION

While Respondents have not filed an opposition in this matter, the Court recites and analyzes arguments made in other similar cases for purposes of ensuring a complete and fulsome opinion.

First, since Petitioner's bond denial claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that it has jurisdiction over this matter. Given that Petitioner is proceeding pro se, the Court construes all of her filings (Dkts. 1; 2) conjunctively as part of her Application.

### A. Petitioner has established a likelihood of success on the merits.

The first *Winter* factor, "the most important factor" in assessing whether injunctive relief should be granted. *Env't Prot. Info. Ctr. v. Carlson,* 968 F.3d 985, 989 (9th Cir. 2020). Here, the Court finds Petitioner has established a likelihood of success on the merits.

First, the Court must first determine whether Petitioner's detention is governed by § 1225(b)(2) and therefore subject to mandatory detention, or if Petitioner falls under § 1226(a) and is subject to detention on a discretionary basis.

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." § 1225(b)(2)(A). Except for a limited exception not applicable here, detention under § 1225 is mandatory. *Jennings*, 583 U.S. at 297. Additionally, under § 1255, individuals are not entitled to a bond hearing. *Id.* ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

As the Supreme Court explained, while "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under § 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under § 1226(a) and (c)." *Id.* at 288–89 (emphasis added); see also *id*. at 288 (explaining that, "once inside the United States . . . an alien present in the country may still be removed" under "Section 1226") (emphasis added). Section 1226(a) provides that, pursuant to a warrant issued by the Attorney General, a noncitizen who is "arrested and detained pending a decision on

whether the alien is to be removed from the United States" may be detained or released on bond. Accordingly, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker.").

The Court also declines to follow the BIA ruling in *Matter of Yajure Hurtado*. The BIA concluded that a noncitizen in the United States, who was not admitted, continues "seeking admission" under § 1225 because the individual "provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission.'" *Yajure Hurtado*, 29 I&N Dec. at 221.

Like many of our sister courts in the District and across the country,[1] the Court disagrees with BIA's novel interpretation of § 1225. Based upon the statutory context, scheme, and text of § 1225, the Court finds it difficult to find that an individual is "seeking admission" or an "applicant for admission" when the noncitizen never attempted to do so.

Additionally, the BIA's reading of § 1225(b) renders superfluous the Laken Riley Act, amendments to § 1226(c), which added in part, subsection 1226(c)(1)(E). *Yajure Hurtado*, 29 I&N Dec. at 222. The amendments applied mandatory detention to noncitizens who are (1) inadmissible because they are present without admission or parole, procured admission into the United States because of misrepresentation, or lacked

[1] See *Santiago Flores v. Noem*, Case No. 5:25-cv-2490-AB-AJR (C.D. Cal. Sept. 29, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304-CAS-BFM, 025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5–9 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4–9 (D. Mass. July 24, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *7–9 (E.D. Mich. Sept. 9, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025), report and recommendation adopted sub nom. *Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025).

proper documentation; and (2) have been charged with, convicted of, or arrested for certain enumerated crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (emphasis added). As noted by other courts, "'If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2).'" *Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (quoting *Maldonado v. Olsen*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025)). If "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." *Id.* For these reasons, the Court declines to adopt the reasoning in *Matter of Yajure Hurtado*.

As acknowledged in *Jennings*, § 1226 applies to "certain aliens already in the country," as opposed to § 1225(b), which "applies primarily to aliens seeking entry into the United States[.]" 583 U.S. at 281, 297. Here, Petitioner was residing in the United States at the time of her detention by ICE. Based on the record before the Court and the plain text of the statute, Petitioner is not "seeking admission" or an "applicant for admission" under § 1225. Thus, the Court concludes § 1225(b) does not apply to people like Petitioner who are "already in this country," *Jennings*, 583 U.S. at 289, and thus Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

**B. Petitioner's Procedural Due Process rights were violated.**

Since Petitioner's detention is discretionary and not mandatory, the Court next addresses whether detention without a bond hearing violates Petitioner's due process rights.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well

established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted)).

The Ninth Circuit has applied the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to due process challenges to removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Whether administrative procedures are sufficient under the Fifth Amendment requires consideration of: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews*, 424 U.S. at 335. Applying the *Mathews v. Eldridge* balancing test, the Court concludes that Petitioner's apparent detention without a bond hearing violates due process.

Petitioner has a significant private interest in not being detained without due process of law. A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner is requesting that DHS adhere to existing procedures and hold individualized bond hearings, as they are entitled to under § 1226(a). At a minimum, § 1226(a) requires a valid exercise of DHS's discretion in making a detention determination. *See* 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Here, the record contains no indication that DHS exercised any discretion in detaining the Petitioner. Indeed, under § 1226(a), DHS has wide latitude in exercising its discretion regarding detention, which is not subject to second-guessing by this Court. The problem is that Respondents have not offered any explanation for Petitioner's detention. Accordingly, Petitioner has no recourse to appeal DHS's detention decision to an immigration judge, who then conducts their own assessment of Petitioner's flight risk and dangerousness, among other factors. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge . . . may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."). Accordingly, Petitioner has established that they have a private interest in their liberty in

advocating for a bond hearing pursuant to § 1226(a), of which they have been completely deprived.

With respect to the second factor, the Court concludes the risk of erroneous deprivation is high. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 690). Petitioner has not received a bond hearing. So there has been no opportunity to determine whether there is a valid basis for Petitioner's detention. See *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025). Therefore, the risk of erroneous deprivation of liberty is high.

Detention under § 1226(a) advances legitimate government purposes such as "ensuring the appearance of aliens at future immigration proceedings" and preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Doe v. Becerra*, 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). So, the burden of affording Petitioner's a bond hearing does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Therefore, the Court finds that Petitioner has a liberty interest and determines that due process required Petitioner to promptly receive a hearing regarding whether detention is warranted. Petitioner has established a likelihood of success on the merits.

**C. Without injunctive relief, Petitioner will likely suffer irreparable harm.**

The Court finds Petitioner has clearly shown risk of irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez*, 715 F.3d at 1144–45 (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

**D. The balance of hardships and public interest is in Petitioner's favor.**

The last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court finds that the balance of equities and public interest factors favors Petitioner. Given that injunctive relief is only the bare minimum required under § 1226, the Court finds the harm to Respondents is minimal. See *Rodriguez*, 715 F.3d at 1145 (finding the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights, . . . because all citizens have a stake in upholding the Constitution." *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation modified). For these reasons, the Court concludes that the balance of hardships and public interest tips sharply in favor of Petitioner.

## IV. Disposition

Based on Petitioner's showing of likelihood of success on the merits and irreparable harm, the minimal harm to Respondents, and the public's interest in upholding the Constitution, the Court **GRANTS** Petitioner's Application (Dkt. 2).

Here, Petitioner has been detained for over two weeks without a bond hearing. Accordingly, the proper remedy is release, rather than an overdue bond hearing.

Respondents are **ORDERED** to release Petitioner (A 246-061-875) from custody immediately under no more stringent conditions of release than before she was detained. Furthermore, Respondents are **ENJOINED** from re-detaining Petitioner unless she is first given a pre-deprivation hearing where she has the opportunity to argue that she is not a flight risk nor a danger to the community.

Respondents are **ORDERED** to file a Notice of Release within FIVE (5) days.

The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue. Respondents shall file any response by **July 22, 2026**, and Petitioner shall file a response no later than **July 29, 2026**.

Furthermore, the Court **REQUESTS** that the Federal Public Defender's Office consider being appointed counsel as Petitioner with her Petition. Specifically, such scope

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:26-cv-03755-DOC-AS Date: July 8, 2026



of representation if affirmed to shall be the following: (1) verifying whether Petitioner is eligible for representation by the Federal Public Defender's Office; (2) assisting Petitioner with the remainder of her Petition; (3) preparing and filing any briefing on whether a preliminary injunction should issue; and (4) representing Petitioner at any necessary hearings.

The clerk shall serve this minute order on the parties and the Office of the Federal Public Defender. The government is also ordered to serve this order on the Office of the Federal Public Defender and any other counsel representing Petitioner.

**cc: Office of the Federal Public Defender**
**Jonathan Aminoff - FDO Jonathan_Aminoff@fd.org**

Initials of Deputy Clerk: kdu